The Honorable J. Richard Creatura

FILED RECEIVED LODGED
JUN 01 2015

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

AMEDEO J. NAPPI,

        Plaintiff,

vs.

TIMBERLAND REGIONAL LIBRARY,
a governmental entity,

        Defendant.

NO. 3:14-cv-05945

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## HISTORY OF CASE

The Timberland Regional Library (TRL) has been operating in five counties in Washington State from its creation without any written policies and procedures that provide "due process notice," guidelines for length of time patrons are expelled/trespassed from its facilities, and an appeal process from any TRL decision regarding being expelled for any length of time to a higher court.

On June 1, 2006, TRL created policy number: Administration 001, which authorizes the Library Director to use its discretion in matters where there is no written policy without consulting the TRL Board of Trustees (TRLBT). See Nappi Declaration Exhibit 11 (Nappi Dec. Ex.).

On November 13 and 16, 2012, plaintiff was accused of violating TRL Behavior Guidelines. See Culp Declaration Exhibit 4 (Culp Dec.), paragraphs No. 4 and No. 6.

On November 16, 2012, TRL employee Ms. Dye informed the plaintiff he was trespassed from the OL for six days. See Nappi Dec. Exs. 3; 4; 10-7, No. 13.

On November 16, 2012, OPD informed the plaintiff he was trespassed from the OL for thirty days. See Nappi Dec. Exs. 3; 4; 10-7, No. 14.

NAPPI RESPONSE TO DMSJ         1

A. Nappi
P.O.B. 11761
Olympia WA 98508
360/259-7848

On November 16, 2012, defendant changed the time plaintiff was trespassed from its Olympia library to six months within fours hours without any personal notice, hearing or investigation and mailed notice of the six month trespass to the plaintiff. See Culp Dec. 2, paragraph No. 6 and Culp Dec. Ex. 4.

In November 2012, plaintiff provided a written formal denial of the allegations and a formal written demand for Defendant's policies and procedures, by-laws and due process protections, guidelines for trespass times, formal hearing, and other documents to defendant. See Heywood Declaration Exhibit 3 (Hey. Dec. Ex.) and Nappi Dec. Ex. 10-6, No. 10.

In November 2012, after making his formal demands to defendant the plaintiff discovered that defendant did not have any written policies and procedures for due process, guidelines for trespass times, and an appeal process. See Nappi Dec. Ex. 10-4-5, No. 2; No. 3; No. 4; No. 5; and No. 7.

From November 2012 to January 2013, plaintiff received numerous letters from TRL which provided only limited facts describing the alleged violation which also contain further false allegations of acts committed by the plaintiff but did not have names of potential witnesses, no witness declarations, or other materials. See Hey. Dec. Exs. 1; 2; and Culp Dec. Exs. 4; 5; 6.

From November 2012 to January 2013, plaintiff sent letters to TRL demanding a formal hearing, defendant's policies and procedures and other documents. See Hey Dec. Exs. 3; 4; 5; 6; 7; 8; 9.

In December 2012, defendant offered plaintiff a telephone hearing to contest the TRL director's decision to trespass the plaintiff for six months without any right to discovery, to examine witnesses, file supporting documents and/or make a written response.

In November 2012, plaintiff provided a written formal denial of the allegations and a formal written demand for Defendant's policies and procedures, by-laws and due process protections, guidelines for trespass times, and other documents to defendant. See Heywood Declaration Exhibit 3 (Hey. Dec. Ex.) and Nappi Dec. Ex. 10-6, No. 10.

In November 2012, after making his formal demands to defendant plaintiff discovered that defendant did not have any written policies and procedures for due process, guidelines for trespass times, and an appeal process. See Nappi Dec. Ex. 12-4-5, No. 2; No. 3; No. 4; No. 5; and No. 7.

NAPPI RESPONSE TO DMSJ                             2

From November 2012 to January 2013, plaintiff received numerous letters from TRL which provided only limited facts describing the alleged violation which also contain further allegations of acts committed by the plaintiff but did not have names of potential witnesses, no witness declarations, or other materials. See Hey Dec. Exs. 1; 2; and Culp Dec. Exs. 4; 5; 6.

From November 2012 to January 2013, plaintiff sent letters to TRL demanding a formal hearing, defendant's policies and procedures and other documents. See Hey Dec. Exs. 3; 4; 5; 6; 7; 8; 9.

In December 2012, defendant offered plaintiff a telephone hearing to contest the TRL director's decision to trespass the plaintiff for six months without any right to discovery, to examine witnesses, file supporting documents and/or making a formal record of the hearing. Plaintiff refused the hearing and served the defendant summons and complaint.

On January 11, 2013, plaintiff personally delivered a letter to Mr. O'Connell, President of TRL Board of Trustees (TRLBT), which contained copies of all plaintiff's letters to TRL. See Nappi Dec. Ex. 9.

TRL never provided the plaintiff any written notice of the procedures that TRL had followed in trespassing the plaintiff and changing the trespass lengths of times, from six days to thirty days to six months, which the plaintiff could object to and appeal from.

In May 2013, defendant published a policy for "due process" and guidelines for trespass times. See Nappi Dec. Exs. 12 and 13.

In December 2014, defendant removed the state case to US Federal Court at Tacoma, Washington.

In April 2015, plaintiff commenced formal discovery with the defendant. See Nappi Dec. Exs. 10; 14.

On May 1, 2015, plaintiff received Defendant's Answers to Plaintiff's Request for Admission. See Nappi Dec. Ex. 10.

As of this date, Defendant's answers to Plaintiff's Interrogatories have not been received.

## PLAINTIFF'S WRITTEN DENIAL OF ALLEGATIONS

Defendant admits that it received plaintiff's formal written denial of the allegations, demand for a formal hearing and TRL appeal process to challenge its decision. See Hey Dec. Ex. 3 and Defendant's Motion for Summary Judgement-3, lines 10-12 (DMSJ).

TRL failed to accept plaintiff's denial of the allegations and subsequently in the process intentionally conspired to fabricate further allegations of plaintiff's conduct not contained in any documents which would deny plaintiff a fair hearing before those that conspired against the plaintiff.

What TRL was requiring from the plaintiff was a response for mitigating circumstances to the allegations which plaintiff totally denied. Plaintiff's denial was not sufficient. See Culp Dec. Ex. 4.

TRL did not want to hear any objections to how it violated its own written polices, the plaintiff's rights and arbitrarily implemented its course of action without guidelines and conspiracy to violate plaintiff's right to a fair hearing.

## VEILED THREATS

DMSJ-4, lines 12-16, alleges thinly veiled threats made by the plaintiff in January 2013 to which plaintiff totally denies. See Nappi Declaration.

Defendant uses Ms. Lane as Ms. Culp used Ms. Pete's allegation that plaintiff "engaged in threatening behavior." Where there is no other proof other than Ms. Lane's declaration. Defendant never informed the plaintiff regarding Ms. Lane's allegations and/or filed any action. The alleged thinly veiled threats the defendant attempts to use to discredit the plaintiff before the Court are the same tactics the TRL directors, Ms. Culp and Ms. Heywood, used in intentionally conspiring in creating and fabricating new allegations in their correspondence without documents supporting them. As created by some witnesses in reporting false events and facts that never happened that has been contradicted by documents, witnesses, and the lack of declarations of eye witnesses such as Ms. Dye, Ms. West, Ms. Smith, Mr. Hoberecht and others to support the false allegation of any "threatening behavior." See Nappi Declaration.

## TRL'S FAILURE TO FOLLOW TRL WRITTEN POLICIES

TRL provided the plaintiff with written proof that TRL did not follow its written policies in dealing with the plaintiff and acted arbitrarily where there were no written policies.

DMSJ-3, lines 1-2, lists the facts that plaintiff: made earlier alleged comments of a sexual nature and was known to engage library staff in extended conversations, in June 2012, see West Declaration Exhibit

1 (West Dec. Ex.). TRL never notified the plaintiff of the alleged incidents until after November 16, 2012. See Culp Declaration Exhibit 4 (Culp Dec. Ex.); and Nappi Declaration.

The alleged incidents were never mentioned again in TRL letters to the plaintiff. See Culp Dec. Ex 7, and Hey Dec. Ex.1; see Nappi Declaration. See Culp Dec. Ex. 2-1, paragraphs a and b.

TRL never authorized Ms. Dye to change the authorized TRL trespass decision from six days to thirty days in violation of TRL policy. See Culp Dec. Ex. 2-1, paragraph 4a.

TRL had no policy that authorizes the Olympia Police Department (OPD) to inform a person of a TRL trespass from TRL facilities.

On November 16, 2012, TRL capriciously changed plaintiff's trespass time three times within four hours without any concern for procedural guidelines, right to notice, right to defend and to prevent the violation of due process.

TRL never informed the plaintiff of the name of the persons making allegations against him, witnesses to the events and failed to provide all documents that were in the possession and under the control of TRL pertaining to the allegations of November 13 and 16, 2012 that would provide a defense to the false allegations.

TRL conspired and acted arbitrary in its actions pertaining to the plaintiff's notice of trespass, due process protections, trespass changes, length of trespass and the TRL polices and guidelines followed by TRL to object to and the creation of false fabricated allegations.

### DID PLAINTIFF FEEL HE COULD GET A FAIR HEARING

NO! Plaintiff did not feel that he would get a fair hearing from TRL after discovering that TRL did not have any written trespass time limits, policies and procedures to trespass plaintiff from TRL facilities and failed to follow the TRL written policies and procedures. See Nappi Declaration.

TRL deleted old allegations in TRL's first notice correspondence (Culp Dec. Ex. 4) to defendant and created knew allegations that were not supported in the documents provided to the plaintiff in following TRL letters (Culp Dec. Exs. 5; 7) and TRL's attorney, through the Defendant's Initial Disclosure (DID),

1 (West Dec. Ex.). TRL never notified the plaintiff of the alleged incidents until after November 16, 2012. See Culp Declaration Exhibit 4 (Culp Dec. Ex.); and Nappi Declaration.

The alleged incidents were never mentioned again in TRL letters to the plaintiff. See Culp Dec. Ex 7, and Hey Dec. Ex.1; see Nappi Declaration. See Culp Dec. Ex. 2-1, paragraphs a and b.

TRL never authorized Ms. Dye to change the authorized TRL trespass decision from six days to thirty days in violation of TRL policy. See Culp Dec. Ex. 2-1, paragraph 4a.

TRL had no policy that authorizes the Olympia Police Department (OPD) to inform a person of a TRL trespass from TRL facilities.

On November 16, 2012, TRL capriciously changed plaintiff's trespass time three times within four hours without any concern for procedural guidelines, right to notice, right to defend and to prevent the violation of due process.

TRL never informed the plaintiff of the name of the persons making allegations against him, witnesses to the events and failed to provide all documents that were in the possession and under the control of TRL pertaining to the allegations of November 13 and 16, 2012 that would provide a defense to the false allegations.

TRL conspired and acted arbitrary in its actions pertaining to the plaintiff's notice of trespass, due process protections, trespass changes, length of trespass and the TRL polices and guidelines followed by TRL to object to and the creation of false fabricated allegations.

### DID PLAINTIFF FEEL HE COULD GET A FAIR HEARING

NO! Plaintiff did not feel that he would get a fair hearing from TRL after discovering that TRL did not have any written trespass time limits, policies and procedures to trespass plaintiff from TRL facilities and failed to follow the TRL written policies and procedures. See Nappi Declaration.

TRL deleted old allegations in TRL's first notice correspondence (Culp Dec. Ex. 4) to defendant and created knew allegations that were not supported in the documents provided to the plaintiff in following TRL letters (Culp Dec. Exs. 5; 7) and TRL's attorney, through the Defendant's Initial Disclosure (DID),

supplied the plaintiff with documents to contradict the conspiracy to intentional fabricated allegations contained in the Culp/Heywood correspondences. See Nappi Declaration; Nappi Dec. Exs. 6; 7; 10.

Plaintiff had no trust that TRL would provide him a fair hearing after experiencing TRL's arbitrary and capricious actions in changing the length of trespass time: three times within four hours without notice to the plaintiff or having any policy to do so; and the false fabricated allegations in TRL's letters.

TRL never provided the plaintiff with any TRL written policies supporting it actions upon which the plaintiff could refer to, object to, defend against, and appeal from. Without a recorded hearing, there would be no record created upon which plaintiff could use to appeal to a higher authority.

There was no offer by TRL to record the hearing and no offer to have plaintiff file written documents to create a formal or any record as plaintiff's correspondence to TRL has indirectly attempted.

Without a recorded hearing and discovery, plaintiff would be in the same situation as he was before filing suit without the disclosure of witnesses' statements and documents. See Nappi Declaration.

## WOULD THE LACK OF A PROPER INVESTIGATION OBSCURE A FAIR HEARING

On November 16, 2012, Ms. Culp (Culp Dec., page 2-3, lines 1; 1-4) received an email from Ms. Pete (Nappi Dec. Ex. 5) that plaintiff had "engaged in threatening behavior" and was trespassed by the OPD for thirty days.

On November 16, 2012, it appears that without interviewing the eye witnesses (Ms. Dye, Ms. West, Ms. Smith and Mr. Hoberecht) and not viewing the documents created on November 16, 2012, Ms. Culp issued the trespass on Ms. Pete's false allegation and unsupported information: "engaged in threatening behavior." See Culp Dec.-3, line 4 and Culp Dec. Ex. 4.

Even if Ms. Culp did view documents on November 16, 2012 there were no documents that contained an eyewitness statement that plaintiff "engaged in threatening behavior." See Nappi Declaration.

Culp Dec. Ex. 4, refers to November 13, 2012 which provides proof that Ms. Culp did not have the facts regarding "engaged in threatening behavior as stated in Culp Declaration-2-3, lines 1; 1-4. This should provide support that Ms. Culp conspired from the start to violate the plaintiff's rights.

NAPPI RESPONSE TO DMSJ                                  6

On November 30, 2012, it is recorded as the first time Ms. Culp began interviewing only Ms. Dye, and Gary Hoberecht regarding November 16, 2012. See Nappi Dec. Ex 8, S. Pete and C. Dye. Ms. Culp did not interview Ms. Pete because she was not an eyewitness on this date. See Nappi Declaration and Nappi Dec. Exs. 8, Sara Pete; 10-10, No. 27.

November 16, 2012 documents (Nappi Dec. Exs. 3 and 4) would have provided Ms. Culp the names of other potential eyewitnesses (Ms. West and Ms. Smith) that could have personal knowledge regarding the false and unsupported allegation by Ms. Pete: "he engaged in threatening behavior."

There is no record that Ms. Dye and Ms. Smith ever made the any declaration/statement supporting Ms. Pete's allegation and none were filed to support the DMSJ. And none of the declarations filed herein support Ms. Pete's allegation. From viewing Nappi Dec. Ex. 6-1 we know that Mr. Hoberecht made this statement: "A little disorderly, but not physical or threatening."

The declarations of Ms. Culp and Ms. Heywood, filed herein, fail to address who besides Ms. Pete, none of these three are eyewitnesses, have stated that plaintiff "engaged in threatening behavior." See Nappi Dec. Ex. 10-10, 11, No. 27; No. 28; and No. 29.

Mr. Hoberecht's personal observations, 911 call on November 16, 2012, did not support Ms. Pete's allegation. Nappi Dec. Ex. 6, below, contradicts Ms. Pete's intentionally false allegation:

"12:14:26: A LITTLE DISORDERLY, BUT NOT PHYSICAL OR THREATENING"

Nappi Dec. Exs. 3 and 4 created by Ms. Dye, with input by Ms. West (KiH), on exhibit 4, do not contain any description that plaintiff "engaged in threatening behavior." See Nappi Declaration.

Nappi Dec. Ex. 7, below, supports the fact that Ms. West is the OL employee that gave plaintiff Sara Pete's business card and was an eyewitness to plaintiff's walking up to the front desk alone and his contact with Ms. Dye of an office on November 16, 2012.

> "Before he approached the office, he asked for the manager's business card I gave him yours."

On November 16, 2012, Ms. Culp was failed to request eyewitness proof and simply took the word of Ms. Pete that plaintiff had "engaged in threatening behavior" and authorize the six months trespass without any effort to ascertain the truth.

Ms. Pete's declaration, filed herein, does not contain any statements regarding November 16, 2012. Not one eyewitness has filed a declaration that states plaintiff: "engaged in threatening behavior."

Had Ms. Culp investigated properly before issuing her trespass order she would have been aware that plaintiff did not "engage in threatening behavior" and Ms. Pete's lack of veracity.

## TRL DEPRIVE PLAINTIFF OF LIBRARY ACCESS WITHOUT A HEARING

On November 16, 2012, TRL implemented three different decisions of trespass in the course of four hours: six days; thirty days and six months before ever offering the plaintiff an informal hearing. See Nappi Dec. Ex. 12, p. 7, Re. No. 13 and Culp Declaration, page 2, lines 23 and page 3, lines 1- 4.

On November 16, 2012, there was no investigation by the TRL Director before making the decision to trespass plaintiff for six months. See Culp Declaration, page 2, line 23 and page 3, lines 1- 4. There are no supporting declarations filed herein and none disclosed to plaintiff from any eyewitness, particularly Ms. Dye, alleging "engaging in threatening behavior." See Nappi Declaration.

On November 16, 2012, Ms. Dye took authority to change the six day trespass authorized by the TRL Director to a thirty day trespass in violation of TRL policy, see Culp Decl. Ex 2-1, paragraph c., it states:

> "TRL may withdraw permission for a person to re-enter its facilities or to access services for a length of time as determined by the Library Director."

The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." Parratt v. Taylor, 451 U.S. 527, 546, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) [quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)].

TRL admits that before May 2013, it had no written policy specifying a particular procedure a member of public should use to demand a hearing for being expelled/trespassed from TRL facilities. See Nappi Dec. Ex. 12-4, No. 2.

TRL admits that it has no written policy specifying a particular procedure a member of the public should use to challenge being expelled from TRL facilities. See Nappi Dec. Ex. 12-5, No. 4. TRL still has no written appeal procedure to a higher authority to review its decisions.

TRL admits that before May 2013, it had no written policy and procedure specifying particular length of time a member of the public should be expelled/trespassed from TRL facilities for a particular violation of TRL policies and procedures. See Nappi Dec. Ex. 12-5, No. 5.

### SECTION 1983

Defendant acknowledges plaintiff's § 1983 claim citing Parratt v. Taylor to file his action against TRL.

State action requires both an alleged constitutional deprivation caused by acts taken pursuant to state law and that the allegedly unconstitutional conduct be fairly attributable to the state. Lugar v. Edmonson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 731L.Ed.2d 482.

The Court's research indicates that one district court has considered the issue, and concluded that a suspension of all library privileges for approximately four months implicated a liberty interest protectible under the Fourteenth Amendment. Grisby v. City of Oakland, 2002 WL 1298759, at *3 (N.D.Cal. June 2, 2002)(citing Wayfield v. Town of Tisbury, 925 F.Supp. 880, 882, 885 (D.Mass.1996).

Under Washington state law, RCW 27.12.270, the plaintiff has a right, a property interest, to use the TRL facilities with the expectation that he will be treated reasonably by TRL employees in his pursuit to enjoy TRL services and not prohibit use when plaintiff complies with TRL rules and regulations.

TRL states that it has the authority, under RCW 27.12.290; to remove any person who willfully violates TRL established rules and regulations.

Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels. Monell v. Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

NAPPI RESPONSE TO DMSJ                9

TRL Director Ms. Culp acted under color of law and authority delegated to her from the TRL Board of Trustees (TRLBT) when she conspired with others to create false misleading facts which would in turn deny the plaintiff TRL services without proof and impair a fair hearing. See Nappi Dec. Exs. 11, No. 4.

Plaintiff has the right to be free from false accusations that deprive plaintiff of a right to use the TRL facilities, loss of property right, that require the plaintiff to defend against at a due process hearing.

Due process, as applied to termination of property interest in employment, requires that the evaluations of whether one gets along and meets the standards not be made in bad faith or arbitrarily and capriciously. U.S.C.A. Const. Amend. 5. Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361 (1976), head note 8.

It has been admitted by TRL that before May 2012, TRL did not have any written policies and procedures and guidelines to follow when the TRL Director issued a decision to trespass the plaintiff from all its facilities for six months. See Nappi Dec. Ex. 12, p. 4, No. 1; Culp Dec.-3, line 1-4.

Plaintiff argues that Ms. Culp/Ms. Heywood acted in bad faith, arbitrarily and capriciously when they failed to properly investigate the false and unsupported allegations against the plaintiff. Then Ms. Culp/Ms. Heywood compounded their bad faith by conspiring to create other false allegations against the plaintiff to prevent the plaintiff from receiving any resemblance of a fair hearing. See Nappi Declaration; Culp Dec. Exs. 4; 5; 7.

Defendant cites City of St. Louis v. Praprotnik, 484, U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(quoting Monell, 436 U.S. at 690) to provide a clear picture of the of when the constitutional injury was caused by a person with final policy making authority.

The actions followed by the TRL Director were based on her on prerogative to the degree of the length of trespasses and due process protections because for years there were never any written guidelines established in reference to TRL violations and due process.

TRLBT knew that it lacked written procedural policies in many areas when on June 1, 2006, it adopted Policy Number: Administration 001, (Nappi Dec. Ex. 13, paragraph No. 4) below:

NAPPI RESPONSE TO DMSJ         10

4. Policy

The Board recognizes that at times decisions may need to be made expeditiously on matters of importance that are not covered by existing policies. The Board therefore, in the absence of a written policy, gives the Library Director or designee full authority to make decisions and take such action as necessary to resolve issues. Such actions shall be reported to the TRL Board not later than its next regular meeting.

Thus, giving the Director, Ms. Culp and Ms. Heywood, the authority to implement any action and to make policy "in the absence of a written policy." The Director had absolute authority to act without permission of TRLBT and make policy in the absence of a written policy. The Director's actions would be considered the same at if TRLBT had adopted a written policy.

Defendant cites Spreadbury v. Bitterroot Public Library, 862 F.Supp.2d 1054, 1054-57 (D. Montana May 30, 2012) that found that "there was only a limited liberty interest in having access to a public library." See Wayfield, supra.

Spreadbury, supra, was afforded due process protection and there was clear and convincing evidence that Spreadbury had on several occasions acted in a disruptive manner and the record supported it.

Plaintiff denied all allegations and there is no evidence by eyewitnesses that plaintiff "engaged in threatening behavior" for which TRL denied plaintiff access to TRL facilities. Also, in Spreadbury there was no issue that the library did not have written guidelines for trespass times, policy for due process, acted arbitrarily, fabricated false allegations and that library staff conspired against him as in this case.

In Hill v. Derrick, No. 4:05-cv-1229, 2006 WL 1620226, at *2 (M.D. Pa.. June 8, 2006), there were several witnesses to Hill's disruptive behavior and hill admitted it to the police too. Again, not the same as in this case where plaintiff denies said conduct and there is no eyewitness statement to the disruptive behavior had been presented to the plaintiff and filed to support the defendant's motion.

Hill and Spreadbury supra, never alleged a conspiracy to falsify and fabricate facts by those in charge that were to hear and decide the evidence at the hearing as in this case. See Nappi Declaration.

Ms. Culp and Ms. Heywood have been in control the whole time: from telephone conversation with Ms. Pete; with directions from Ms. Culp to Ms. Pete to Ms. Dye to Ms. Pete's false allegation to Ms. Culp's decision of trespass and to an informal telephone hearing, all actions directed by the director-- not

NAPPI RESPONSE TO DMSJ                         11

written policy. It is also notable that Ms. Culp and Ms. Heywood were not eyewitnesses and were the original conspirators with Ms. Pete to fabricate false misleading statements regarding the plaintiff's behavior. See Nappi Declaration.

Due process requires the fundamental right to a fair hearing. Ms. Culp and Ms. Heywood already demonstrated their conspired prejudice and impartiality by the content on their letters that each contained false fabricated and misleading allegations and events that did not exist and were not supported by documents and eyewitness testimony. See Nappi Declaration.

"Due process is flexible and calls for such procedural protections as the particular situation demands." Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992) (citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47L.Ed.2d 18 (1976)).

Even a proper hearing cannot guarantee to protect the individual's rights when those in control have conspired to fabricate false accusations and statements against the accused.

Mathews, supra, 983, makes the following statement which supports the plaintiff's claim above:

"Second, the risk of an erroneous deprivation of (a property) interest through the procedures used ..."

No matter how flexible due process is under plaintiff's circumstances a fair hearing could not be possible without a formal record and discovery to appeal from.

How else would the plaintiff be able to defend against the discrimination and conspiracy by those in charge: fabricating false statements, convicting without proof, and sentencing without guidelines? See Nappi Declaration.

Spreadbury, at 1059, talks about an officer "acting affirmatively towards a plaintiff and is, him or herself, the injurious force that caused harm to the plaintiff." This is the situation that the plaintiff faced with the TRL directors Ms. Culp and Ms. Heywood and Ms. Pete intentionally fabricating false misleading facts and events without support. See Nappi Declaration.

In this case, plaintiff claims that due to the arbitrary acts by TRL directors intentionally creating false misleading facts it would be almost impossible to have a fair hearing under the conditions offered by TRL even with a recorded hearing and discovery.

NAPPI RESPONSE TO DMSJ                    12

Culp Dec. Ex. 4, November 16, 2012, informs plaintiff that he has received the six months trespass for allegedly "repeatedly said making inappropriate things to staff members." There is no notice of: "engaging in threatening behavior." See Nappi Dec. Ex. 5; Culp Dec. Ex.-3, lines 1-7.

Culp Dec. Ex. 5, December 7, 2012, informs the plaintiff now he is accused to have "engaged in threatening behavior" and other false allegations. See Nappi Declaration.

No eyewitness statements were ever presented to the plaintiff that stated the plaintiff ever "engaged in threatening behavior." See Nappi Declaration.

There must be "a written statement by fact finders as to the evidence relied on and reasons for the disciplinary action." Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963)(citing Morrissey v. Brewer, 408 U.S., 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484). This was a bare requirement required in a prisoner's rights of loss of good time.

An elemental step to a fair hearing is to have notice of the alleged accusation in writing, the penalty guidelines for the violation and provide documented evidence supporting the allegation.

The plaintiff has recently found the documents to prove conspiracy and discrimination perpetrated by the Defendant and analyzed them in detail for the Court herein. See Nappi Declaration.

Plaintiff was facing a conspiracy perpetrated by the Defendant, Ms. Culp, Ms. Heywood and Ms. Pete, falsely accusing him of alleged violations without proof and to violate his right to a fair hearing.

Plaintiff has presented proof that Ms. Blakney is supporting the defendant by influencing witnesses to make false and misleading statements to violate the plaintiff's right to a fair hearing before this Court. See Nappi Declaration.

Exhaustion of administrative remedies is not prerequisite of suit brought under federal civil rights statute providing liability for deprivation of rights under color of state law, and thus action brought against university after plaintiff's application for employment had been rejected a number of times should not have been dismissed for her failure to exhaust administrative remedies within the state university system. 42 U.S.C.A. § 1983. Patsy v. Florida International University, 612 F.2d 946 (1980)(citing numerous cases).

NAPPI RESPONSE TO DMSJ                    13.

Justice Blackmun concurring in Parratt, supra, at 546, had incite to cases similar to the plaintiff's case and wrote the following:

> "In the majority of such cases, the failure to provide adequate process prior to inflicting the harm would violate the Due Process Clause. The mere availability of a subsequent tort remedy before tribunals of the same authority that, though its employees, deliberately inflict the harm complained of, might well not provide the due process of which the Fourteenth Amendment speaks."

This is the situation plaintiff was confronted with in having to submit to a phone hearing conducted by Ms. Culp and Ms. Heywood which plaintiff had evidence to proved they had conspired in fabricating false accusations which the plaintiff would have to defend against with them in charge.

## ESTABLISHED FACTS

Plaintiff has a property right by law to access the TRL facilities and services.

TRL acted under color of law.

Nappi Dec. Ex. 3 establishes that on November 16, 2012, Mr. Hoberecht made a "911 call" form inside the OL as soon as Mr. Hoberecht and Ms. Dye left plaintiff at the computer.

Hoberecht Declaration fails to acknowledge or comment on Blakney Dec. Ex.1 (Nappi Dec. Ex. 6).

Ms. Blakney has failed to comment on Blakney Dec. Ex.1 (Nappi Dec. Ex. 6).

Nappi Dec. Ex. 6 establishes the following time frames on November 16, 2012:

1. Mr. Hoberecht made the 911 call at:   12:13:18

2. Mr. Hoberecht reports and observed plaintiff to arrive at the office talking to Ms. Dye, almost a minute after they left plaintiff at the computer:

    12:13:04  He is at the Adult Services Office currently.

3. Mr. Hoberecht reported plaintiff's contact with Ms. Dye:

    12:14:26  A little disorderly, but not physical or threatening.

4. Mr. Hoberecht observed plaintiff with Ms. Dye for two minutes and forty-two seconds:

    12:13:04 to 12:15:46 = 2 minutes and 42 seconds

5. Mr. Hoberecht observed plaintiff leaving the OL after talking to Ms. Dye for two minutes and forty-two seconds:

    12:15:46  Now looks like subj is leaving.

Nappi Dec. Ex. 6 proves that plaintiff did not follow Ms. Dye and Mr. Hoberecht to her office: plaintiff arrived at the adult services office a minute after Ms. Dye.

Nappi Dec. Exs. 6 and 10-10, No. 25a, proves that plaintiff was not removed from the OL by the OPD as stated in Culp Dec. Exs. 5; 7; and Hey. Dec. Ex. 1.

Ms. West's declaration does not mention her eyewitness observations on November 16, 2012, between plaintiff and Ms. Dye.

Nappi Dec. Ex. 4 reports on November 16, 2012, Ms. West was at the OL front desk and had contact with plaintiff and was standing within a few feet of plaintiff and Ms. Dye:

> "He asked me for the business card of the manager....."

Nappi Dec. Ex. 7 establishes Ms. West observed plaintiff walk up to the OL front desk alone and observed plaintiff's contact with Ms. Carrie Dye at the office:

> "...before he approached the office, he asked me for the manager's business card... he might think Carrie is you.....since she was the only person he was dealing with"

Nappi Dec. Exs. 6 and 7 contradict Ms. Dye and Mr. Hoberecht statements in Nappi Dec. Exs. 3 and 4 and Hoberecht Declaration that: "plaintiff followed them to the office confronting them continually in a loud, angry and belligerent manner."

Nappi Dec. Ex. 8 establishes that Ms. Pete was not at the OL on November 16, 2012:

> "...they were going to ask you more details about the day I wasn't there...."

Nappi Dec. Ex. 10 provides numerous admissions by the defendant: Ex. 10-11, Nos. 27; 28; 29: TRL admits that Ms. Pete, Ms. Culp and Ms. Heywood were not at the OL on November 16, 2012.

None of the declarations filed in this case contain any eyewitness accounts that plaintiff "engaged in threatening behavior on November 16, 2012 proving that Ms. Pete's statement (in Nappi Dec. Ex. 5) to Ms. Culp and Ms. Heywood was a false fabricated allegation and intentionally designed to influence Ms. Culp to trespass plaintiff from the OL for six months and unlawfully denying plaintiff's right to use the TRL facilities to his enjoyment.

**Best scanned image available.**

NAPPI RESPONSE TO DMSJ 15

1   Nappi Dec. Ex. 10-9, No. 23, TRL admits that "Ms. Pete and Mr. Hoberecht did not witness plaintiff leave the OL on November 13, 2012" which contradicts Culp Dec. Exs. 5 and 7, at No. 2:

2   "…you left the library in an angry disruptive manner."

3   Nappi Dec. Ex. 6 and 7 and Hoberecht Declaration contradicts Culp Dec. Exs. 5 and 7, at No. 3:

"…you acted out in an overtly angry and threatening manner toward library staff."

4   Nappi Dec. Ex. 6 and 7 contradicts Culp Dec. Exs. 5 and 7, at No. 3:

5   "…your behavior was so threatening toward library staff that one staff member felt the need to retreat to her office in order to be protected from your behavior. "

6   Culp Dec. Ex. 4 proves that Ms. Culp did not have all the facts when she trespassed the plaintiff

7   because Culp Dec Ex. 4 does not contain the statement: "he engaged in threatening behavior."

8   Nappi Dec. Exs. 6; 7; 10; provide proof that Ms. Culp and Ms. Heywood conspired to fabricate false misleading facts against plaintiff in Culp Dec. Ex. 5; and 7.

9   Heywood Dec. Exs. 3; 5; 6; 7; 9: proves plaintiff requested a record hearing and discovery.

10  Before May 2013, TRL had no written guidelines for trespass lengths of time, due process and process

11  to appeal TRL decisions. Nappi Dec. Ex. 10-5, No. 4; 5; 6; 7.

Nappi Declaration provides a clearer analysis of the established facts above and sufficient support

12  contradicting other false fabricated accusations intentionally conspired by Ms. Culp, Ms. Heywood, Ms.

13  Dye, Ms. Pete, and Mr. Hoberecht. See Nappi Declaration.

## CONCLUSION

14  TRL failed to provide plantiff adequate due process in the course of being trespassed. TRL Directors

15  and others conspired to create false fabricated accusations to prevent the plaintiff from receiving a fair hearing. TRL Directors ruled against the plaintiff without a proper investigation, without any eyewitness

16  statements and conspired to deprive plaintiff of a property right without due process. Plaintiff is entitled

17  to take his case to trial and defendant's motion for summary judgment is denied.

18  Dated this  /  day of June, 2015.

19

20  *[signature]*
    Amedeo Nappi, plaintiff.

21  OB 11761
    Olympia, WA 98508

22  (360) 259-7848

23

24